**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **JAMES RODDEN, et al.,** | ) | |
| | ) | |
| | ) | |
| *Plaintiffs,* | ) | Civil Action 3:21-cv-00317 |
| | ) | |
| v. | ) | |
| | ) | |
| **DR. ANTHONY FAUCI, et al.,** | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFFS' REPLY**

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................i

TABLE Of AUTHORITIES...........................................................................................ii

INTRODUCTION .......................................................................................................... 1

Argument ....................................................................................................................... 2

    I.      As the Class Plaintiffs Are Not Challenging Adverse Employment Actions Against Them, Their Constitutional and Statutory Claims Are Properly Before This Court ....................................................................................................................... 2

    II.     This Court Has Jurisdiction Over These Claims ................................................... 3

    III.    The Cases Cited By Defendants Are Either Not Controlling Or Inapposite ....... 14

## TABLE OF AUTHORITIES

**Cases**

*American Federation of Government Employees v. Federal Labor Relations Board*, 794 F.2d 1013(5th Cir., 1986) ........................................................................................ 4

*Astoria Fed. Sav. & Loan Assn. v. Solimino,* 501 U.S. 104 (1991) ................................ 20

*Bridges v. Colvin,* 136 F.Supp.3d 620 (2015) .................................................................. 8

B*roadway v. Block*, 694 F.3d 979 n. 1 (5th Cir., 1982) ................................................... 17

*BST Holdings, LLC et al. v. OSHA*, __F.4th __, 2021 WL 5279381 n. 6 (5th Cir.) ........... 11

*Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996) .......................... 9

*Church v. Biden,* 2021 WL 5179215 (D.D.C., 2021) ....................................................... 11

*Citizens for Responsibility & Ethics in Wash. v. Office of Admin.*, 249 F.R.D. 1 (D.C. Cir. 2008) ............................................................................................................................. 18

*Daubert v. Merrell Dow Pharmaceuticals Inc*, 509 US 579 (1993) .................................. 3

*Esparraguera v. Dept. of the Army*, 981 F.3d 1328 (Fed. Cir., 2020) ........................... 7, 9

*Federal Law Enforcement Officers Assoc. v. Cabanis,* 2019 WL 5697168 *5 (D.D.C., 2019) ............................................................................................................................... 9

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.,* 561 U.S. 477(2010) 1, 5, 6

*Gonzalez v. Manjarrez, Jr.*, 2013 WL 12177, *9-10 (W.D. Texas) ................................. 13

*Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir.) ......... 13

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F.Supp.2d 20 (D.D.C. 2002) ...................................................................................................................................... 12

*Kloeckner v. Solis*, 568 U.S. 41 (2012) ......................................................................... 13

*McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991) ...................................... 15

*Roland v. Marsh*, 937 F.2d 134 (5th cir. 1991) .............................................................. 17

*Smith v. Biden*, 2021 WL 5195688  (D.N.J., Nov. 8, 2021) ....................................... 11, 13

*Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 208 (1994) ........................................... 6

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) ............................................................... 19, 20

*Turner v. U.S Agency for Global Media,* 502 F.Supp.3d 333 (2020) ............................... 9

*United States v. Fausto*, 484 U.S. 439 (1988) ............................................................... 14

*Verizon, Md., Inc. v. Public Service Comm'n*, 535 U.S. 635 (2002) ................................. 5

*Vietnam Veterans of American v. CIA*, 288 FRD 192, n.12 (N.D.Cal., 2012) ................. 10

*Wigton v Berry*, 949 F.Supp.2d 616, 633-640 (W.D. Pa.,2013) ..................................... 10

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ...................................... 6

**Statutes**

10 U.S.C. § 1107 .......................................................................................................... 20

21 U.S.C. § 360 ............................................................................................................ 20

28 U.S.C. § 1331 ...................................................................................................... 5
28 U.S.C. § 2201 .................................................................................................... 13
28 U.S.C. § 2202 .................................................................................................... 13
5 U.S.C. § 2302 ............................................................................................... 12, 13
5 U.S.C. § 3301 .................................................................................................... 16
5 U.S.C. § 3302 .................................................................................................... 16
5 U.S.C. § 7301 .................................................................................................... 16

**Other Authorities**

"Memorandum Opinion for the Deputy Counsel to the President" (July 6, 2021) (OLC
    Op.)............................................................................................................ 18, 19, 20

## INTRODUCTION

The Defendants, saddled with an unlawful Executive Order ("EO") requiring COVID-19 vaccination for all federal employees, and clear precedent on irreparable harm from this Circuit, have responded by attempting to establish that this Court does not have jurisdiction. In fact, it does. Plaintiffs are not challenging any adverse employment event. They are challenging (1) being vaccinated against their will and for no good reason and (2) the (unpublished) rules of each agency directing them to do so. As the Complaint says, though these rules are "shifting," they are effectively final as they are slated to be enforced imminently (in fact, as early as yesterday). For these reasons, this case falls within the exception to Civil Service Reform Act ("CSRA") pre-enforcement review of agency rules.

Furthermore, Plaintiffs challenge the EO itself, the Task Force that serves as the enforcer of the EO, and the unpublished Task Force Guidance that explicates the Federal Employee Vaccine Mandate (the "Vaccine Mandate"). The EO and the Guidance can be reviewed by this Court even some avenue for review in another forum exists to adjudicate adverse action is taken by an individual agency. *See Free Enterprise Fund v. Public Co. Accounting Oversight Bd.,* 561 U.S. 477, 490-491 (2010) ("We normally do not require plaintiffs to "bet the farm ... by taking the violative action" before "testing the validity of the law,.. and we do not consider this a "meaningful" avenue of relief.") (citations omitted). Courts across the country have retained jurisdiction in similar injunctive and declaratory actions across the country post-*Elgin*. So should this one.

1

**ARGUMENT**

I. **AS THE CLASS PLAINTIFFS ARE NOT CHALLENGING ADVERSE EMPLOYMENT ACTIONS AGAINST THEM, THEIR CONSTITUTIONAL AND STATUTORY CLAIMS ARE PROPERLY BEFORE THIS COURT**

The Class Plaintiffs and the Class have brought this case to challenge the unconstitutional and unlawful pressure, levied upon them by Defendants, to take an Emergency Use Authorization (EUA) vaccine when they pose no greater danger to themselves or others than the vaccinated.[1]  They have sued the agencies imposing this rule across the board and the United States of America itself for Constitutional and statutory violations. Even under a rational basis analysis, there is no response from the government of why foreign vaccines, such as Sinovac, are acceptable to retain your employment but natural immunity is not. In 600 pages of submissions none of the arguments or declarations submitted with the Defendants Opposition to the Motion for Preliminary Injunction ("Defs. Opp.") mention Sinovac's efficacy or that of the other foreign vaccines and this point is uncontested.[2] Compare e.g., Declaration of Jayanta Bhattacharya (DE 1-4) ¶ 47 with the declarations of Drs. Peter Marks and John T. Brooks (DE 23-1 and DE 23-2, respectively).

---

[1] Indeed, in a recently publicized response to a FOIA request, the CDC acknowledged that it did not have *a single example* of an unvaccinated, COVID-recovered individual spreading the virus to another person (*see* 11/5/21 CDC Response to FOIA Request (attached as Exhibit 1).

[2] Plaintiffs engage primarily with the jurisdictional question as all else has been adequately addressed. Defendants have failed to overcome the presumption of natural immunity that the Fifth Circuit recognized in *BST Holdings, LLC v. OSHA*. The opinions on natural immunity submitted by Defendants are likely  too insubstantial for admission under *Daubert v. Merrell Dow Pharmaceuticals Inc*, 509 US 579 (1993), but that is an issue for another day.

Plaintiffs do not seek reinstatement or back pay; indeed, as of yet, no adverse employment consequences have occurred, although the threat is imminent.  The Merits System Protections Board ("MSPB") is not empowered to enjoin an Executive Order, decide constitutional or federal statutory claims, or determine that plaintiffs do not have to be vaccinated.  Further, this is not a claim that Plaintiffs' medical or religious exemptions were denied erroneously and should be granted by the MSPB.   This is a purely injunctive case challenging unconstitutional regulations that are putting enormous pressure on Plaintiffs to undergo an unwanted and unnecessary medical procedure.  It differs, factually, from all the cases cited by Defendants.

 It is also conceded that Plaintiff Rodden is a probationary employee.  DE 23 at 14, n. 4.  This means that he, and all the other probationary employees he represents (as a Class representative), cannot appear before the MSPB as of right. In fact, all that is permitted is Office of Special Counsel ("OCS") review, which likely creates the discretionary outcomes that court after court determined can be contested in district court.

## II.  THIS COURT HAS JURISDICTION OVER THESE CLAIMS

Defendants assert that *Elgin v. Dept. of Treasury,* 567 U.S. 1 (2012), in which the Supreme Court held that the Civil Service Reform Act (CSRA) gives exclusive jurisdiction under the Act to the Federal Circuit, governs this case.  Defendants' assessment is incorrect, because this is a lawsuit seeking injunctive and declaratory relief against an EO and implementing regulations that violate Plaintiffs' constitutional and statutory rights.  There

has been no adverse employment action taken against the plaintiffs and they are not seeking backpay, reinstatement or any other monetary or employment benefit.

True, *Elgin* contained constitutional claims. But underpinning that decision was the understanding that those First Amendment speech claims were often adjudicated before that tribunal. The Court believed that there were threshold questions within the MSPB's expertise that it could address before reaching the Constitutional questions. *Id.* 561 U.S. at 22-23. Here, there are no such threshold questions; Defendants do not claim there are any. Moreover, in *Elgin* the petitioners were challenging a statute — the selective service requirements. By contrast, here, it is the rules formed by an Executive Task Force and the Executive Order ("EO") that are at issue. These rules are reviewable by a district court, but not addressable by an executive agency. *See American Federation of Government Employees v. Federal Labor Relations Board*, 794 F.2d 1013, 1015-16 (5th Cir., 1986) (holding that the CSRA granted the applicable review board no power to adjudicate a challenge employees brought to a governmentwide rule and sending to district court).

In this case, we cannot predict what the outcome of the Vaccine Mandate will be for every employee, but we do know that the harm of undergoing an undesired medical procedure is irreparable. Given that the EO and the agency regulation designed to enforce it applies to every government employee whether appointed, civil service, probationary or otherwise, it is Defendants' burden to show that every Class Plaintiff and member had

jurisdiction removed as to their constitutional claims.  They have failed to make any such showing.[3]

Congress granted federal district courts "original jurisdiction of all civil actions arising under the Constitution." 28 U.S.C. § 1331. This federal-question jurisdiction "has long been recognized" as a bulwark for "protecting rights safeguarded by the Constitution." *Free Enterprise Fund*, 561 U.S. at 491 n.2. While Congress can, and occasionally does, "exclud[e]" certain claims from the jurisdiction of federal district courts, it typically does so "expressly." *Verizon, Md., Inc. v. Public Service Comm'n*, 535 U.S. 635, 644 (2002). Even if not explicitly stated, the Supreme Court has ruled in some cases that "Congress intended" for that scheme to be "exclusive," even if it does not "facially" eliminate federal question jurisdiction. *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 208, 212-16 (1994). But that kind of "implied" jurisdiction-stripping, *Elgin*, 567 U.S. at 12, is "[g]enerally" confined to instances in which "agency expertise [will] be brought to bear on particular problems." *Free Enterprise Fund*, 561 U.S. at 489.  Every case in which the Court has found that Congress impliedly intended to strip district courts of jurisdiction involved challenges to the agency's decision, rather than challenges to the constitutional legitimacy of the decisionmaker (as here, Plaintiffs challenge the constitutionality of the Executive Order and the Task Force's authority and "Guidance").  *See Complaint,* Introductory Statement ¶¶ d, e, f and i; and ¶¶ 118-137; *see also  Youngstown Sheet & Tube Co. v.*

---

[3] Defendants note that no class has yet been certified.  It would be unreasonable to expect otherwise at this point.  We are still in the preliminary injunction phase, and this motion was made as soon as possible and under extreme time pressure of the Defendants' making.  The OSHA and Federal Contractor vaccine mandates do not go into effect until January 4th, 2022.  Inexplicably, the federal employees face a much earlier deadline.

*Sawyer,* 343 U.S. 579 (1952) (holding President Truman's steel-seizure order, Executive Order 10,340, to be unconstitutional).  Plaintiffs seek to prevent *all* the agencies from enforcing the Guidance against all members of the class.  That is far different from a handful of employees' disagreements with a single agency's idiosyncratic employment decision.

The Federal Circuit itself (where Defendants say these claims will be adjudicated at some unspecified future point) recently disclaimed jurisdiction and noted that cases similar to this should be brought in District Court.  *See Esparraguera v. Dept. of the Army*, 981 F.3d 1328 (Fed. Cir., 2020).  In that case, Petitioner had been removed from her position for performance reasons from the Senior Executive Service ("SES") and demoted.  She brought case in the Federal Circuit alleging due process violations.  *Id.* at 1329.  The Court noted that the federal civil service is divided, like Gaul, into three parts: the competitive service, the excepted service and the SES.  *Id.* at 1329-30.[4]  As in *Esparraguera*, this litany of possible results strengthens Plaintiffs' contention that at least some of those outcomes will be unreviewable by the MSPB, or discretionary in OSC, and so permits them to seek relief directly from this Court.

The Court further noted that: "under *Elgin*, the CSRA channels judicial review of an adverse action through the Federal Circuit *only if* it first channels review through the Board." *Id.* at 1338 (emphasis added).  Continuing, it observed that the Board is not empowered to review an adverse employment action – such as one requiring emergency

---

[4] The class here includes members in each of the three services. Defendants must show that jurisdiction over all of them has been explicitly or implicitly stripped from this Court, which it has not done.

vaccine use— in which case the district courts ought to be available.   The Government

agreed.  *Id.* at 1338.  Its litany of examples is instructive:

> We observe, as does the government, that district courts have indeed been
> willing even after *Elgin* to hear constitutional challenges where Board review
> of an adverse employment action is unavailable. *E.g.*, *Coleman v.
> Napolitano*, 65 F. Supp. 3d 99, 103–05 (D.D.C. 2014) (holding that a district
> court had jurisdiction to hear plaintiff's due process claim where Board
> review was unavailable under the CSRA); *Davis v. Billington*, 51 F. Supp.
> 3d 97, 106–09 (D.D.C. 2014) (same); Lamb v. Holder, 82 F. Supp. 3d 416,
> 422–24 (D.D.C. 2015) (same); *accord Semper v. Gomez*, 747 F.3d 229, 241–
> 42 (3d Cir. 2014) (concluding that a "federal employee who could not pursue
> meaningful relief through a remedial plan that includes some measure of
> meaningful judicial review" would not be precluded by the CSRA from
> bringing a district court constitutional challenge); *see also Webster .v. Doe*
> 486  (1988)  (holding that a constitutional claim was reviewable in district
> court even where the substance of the underlying termination decision was
> not).

*Id.*

The CSRA does not channel challenges against EOs and decision-making Task

Forces directing *all agencies* to do something.  Under this clear Federal Circuit precedent,

jurisdiction does not lie there.

In addition to the cases cited by the Federal Circuit, there are a host of others

demonstrating that the district courts retain jurisdiction over federal employees' collateral

constitutional claims that seek injunctive and declaratory relief rather than back pay.   For

instance,  *Bridges v. Colvin,* 136 F.Supp.3d 620 (2015), a social security ALJ brought a

host of claims, including due process, stemming from his reassignment.  The district court,

faced with the same argument made here, held that the CSRA did not preclude the ALJ

from litigating constitutional claims for equitable and declaratory relief in federal court.

*Id.* at 642.[5]   As in *Esparraguera* and *Bridges,* Plaintiffs would not be able to challenge the EO or the Task Force in the Federal Circuit.  Thus, it is beyond evident that these claims may be brought in District Court.  *See Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996).   *See also Turner v. U.S Agency for Global Media,* 502 F.Supp.3d 333, 372 (2020) (holding that Supreme Court has long recognized propriety of an injunction against federal officials who contravene federal law or the Constitution).

Further, *Elgin* does not preclude pre-enforcement review of the Office of Personnel workplace regulations.  *Federal Law Enforcement Officers Assoc. v. Cabanis,* 2019 WL 5697168 *5 (D.D.C., 2019) (holding that any assertion that OPM's workplace rules are not reviewable under the APA pre-enforcement is "meritless.").  Here, the Office of Personnel Management ("OPM") is named as a defendant and its enforcement of the Federal Employee Vaccine Mandate is being challenged pre-enforcement.  The Defendants cannot enact what is effectively a rule, and then evade judicial pre-enforcement review of that rule.  To hold otherwise would be to elevate form over substance and allow the executive to act lawlessly and without accountability.

If the Court does not review the matter immediately, the pressure on Plaintiffs will remain, constituting an ongoing violation of their constitutional rights.  Congress cannot possibly have intended for that to be the case.  *See also Vietnam Veterans of American v. CIA*, 288 FRD 192, n.12 (N.D.Cal., 2012) (distinguishing *Elgin* and noting that the plaintiffs' claims would not be addressed individually); *Wigton v Berry*, 949 F.Supp.2d

---

[5] As noted below that same OLC has issued an erroneous memo that will be binding on these agencies in any decision, and which is not binding on this Court.

616, 633-640 (W.D. Pa. 2013)(retaining post-*Elgin* jurisdiction for unaddressed constitutional claims, and perhaps class action treatment).

Defendants argue that Plaintiffs lack standing or their claims are not ripe because they have pending exemption requests and no adverse employment action has yet been taken.   But American courts do not require violations and issuing of punishments before adjudicating facially unlawful rules.  Defendants' contention that Executive Orders cannot be enjoined is contrary to some of the most famous cases in American jurisprudence (such as the already-cited Steel Seizure cases). In fact, there would be no such thing as injunctive relief if Defendants were correct.    Policy-wise, to adopt Defendants' logic would encourage the Executive Branch to rule by decree, without issuing regulations.  It is obvious that this interpretation of the ripeness doctrine cannot be correct, as even Defendants' cited cases demonstrate.  *See Smith v. Biden*, 2021 WL 5195688 *5 (D.N.J., Nov. 8, 2021) (finding both jurisdiction despite the CSRA and ripeness despite no negative employment action).

To the extent Defendants take the position that the lawsuit is unripe, or Plaintiffs lack standing, because 10 of the 11 are awaiting determinations of religious or medical exemption requests, Defendants conveniently neglect to address the fact that only one plaintiff needs to have standing or a ripe request for this suit to proceed.  And, as they acknowledge, Ms. Mezzacapo has not sought an exemption.   Thus, *assuming arguendo* that the other Plaintiffs' exemption requests mean they do no not have standing or their claims are unripe, the suit can proceed on the basis of Ms. Mezzacapo's allegations alone. *See BST Holdings, LLC et al. v. OSHA*, __F.4th __, 2021 WL 5279381 n. 6 (5th Cir.) (finding

that only one petitioner needs standing to contest regulation). In any event, the other 10 Plaintiffs' claims are not unripe, because the exemption requests could be denied, and they wish to pursue their right to have their natural immunity recognized as equivalent scientifically to that acquired through vaccination. The cases cited by Defendants are easily distinguishable. *Church v. Biden,* 2021 WL 5179215 (D.D.C., 2021) is a religious exemption case, in which the Plaintiffs' requested exemptions were denied.  That is an entirely different circumstance than the one presented in this case.

The Defendants argue that the Task Force is not an agency and therefore not subject to APA requirements.  This is unlikely to be the case.  The Executive should not be able to circumvent APA requirements by calling an agency by another name.

The Government unsuccessfully argued in *Judicial Watch v. National Energy Policy Development Group* that agency-heads participating in policy-making groups were not engaged in "agency actions" under the APA because they were not making decisions on behalf of their respective agencies.   *See Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F.Supp.2d 20, 38 (D.D.C. 2002).  The District Court found that the types of activities the policy group engaged in were the kind of "agency powers" Congress included in its definition of "agency action."   It went on to explain that an action that otherwise qualifies as an "agency action" under the APA does not cease being so simply because the agency head is on an interagency advisory committee. *Id.* at 39-40*.*  The Administration could not evade APA requirements by creating what was in effect agency but calling it otherwise.  The same holds true here.  *See also* 5 U.S.C. § 2302(C) (""" agency" means Executive agency.".)

In any event, this suit seeks Declaratory judgment that the Vaccine Mandate violates the constitutional and statutory rights (under the EUA) of Plaintiffs and those similarly situated.   *See* 28 U.S.C. § 2201, 2202.  *See e.g.,* Complaint ¶ 49.  The Court maintains unimpaired jurisdiction to declare the EO and Guidance unlawful because the specific employment action against every employee is not the crux of the issue.  *See Gonzalez v. Manjarrez, Jr.*, 2013 WL 12177, *9-10 (W.D. Texas) (finding, post-*Elgin*, existence of declaratory judgement act jurisdiction over government employees' claims, but declining to exercise it under a different doctrine).

Even cases favorably cited by Defendants from *this month* are at odds with the baseless contention that there is no jurisdiction to attack the Executive Order.  In *Smith v. Biden*, No. 21-cv-19457, 2021 WL 5195688 (D.N.J. Nov. 8, 2021), addressing the CSRA, the court explained that:

> Defendant argues that the claims of the employee Plaintiffs are precluded by failure to exhaust their administrative remedies under the CSRA. Congress enacted the CSRA to create "a framework for evaluating personnel actions taken against federal employees." *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012). The "comprehensive and exclusive" remedial scheme, *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir.), *cert. denied*, 558 U.S 989 (2009), enumerates thirteen "prohibited personnel practices," which, if taken against a federal employee, must be brought before the Office of Special Counsel ("OSC") in the first instance, 5 U.S.C. § 2302(b). If OSC determines that there are reasonable grounds to believe that a violation has occurred, then it "shall report the determination together with any findings or recommendations" to the Merit Systems Protection Board ("MSPB") and the employing agency. *Id.* § 1214(b)(2)(B). Only if the employee exhausts this administrative procedure and does not prevail before the MSPB, may they pursue judicial review in the Federal Circuit. *Id.* §§ 1214(c), 7703(a)(1).  However, in this case, adverse action is being threatened but has not yet been taken against the employee Plaintiffs. The Plaintiffs do not, as of yet, have cognizable claims to be brought under the CSRA. It is further illogical to suggest that the subordinate agencies of the

Executive Branch have exclusive jurisdiction to determine whether an Executive Order issued by the President, that they have been directed to implement, is constitutional. Thus, the Court rejects the Defendant's argument that the claims of the employee Plaintiffs are barred by the CSRA.

The CRSA is no barrier to this suit because Plaintiffs are not seeking relief from adverse employment actions undertaken by their agency employers. *See, e.g., United States v. Fausto*, 484 U.S. 439, 455 (1988) (where non-preference-excepted service employee was attempting to challenge a suspension). Rather, this suit seeks judicial review of action by the Task Force—which has set itself up as a regulator of federal employers. Specifically, the Task Force, by virtue of implementing the Vaccine Mandate, has issued a meta-policy regulating all federal agencies by requiring them to take a progression of mandatory disciplinary steps against employees who refuse to take a COVID-19 vaccine because they possess natural immunity. The CSRA is not equipped or authorized to adjudicate the validity of the Task Force's action. Indeed, no statute authorizes the Vaccine Mandate or the creation of the Task Force.

*Elgin*'s footnote 11 preserves the remedy of ordinary judicial suits when "a statutory review scheme … provided no opportunity for the plaintiffs to develop a factual record relevant to their constitutional claims *before the administrative body.*" 567 U.S. at 21 n.11 (emphasis added) (interpreting *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991) ("the administrative appeals process does not address the kind of constitutional claims at issue") (cleaned up)). Here, the Task Force is unique, and does not provide an opportunity for those who are impacted by its regulations to challenge its actions before the MSPB or otherwise make a record. And *no statute* provides for judicial review of Task

12

Force, as opposed to legislative, action.  For these reasons, it is of particular importance that the Court in this case exercise non-statutory judicial review.

A back-end suit of an adverse employment action by individual federal employees cannot be the only remedy here.  The Task Force commands that federal employees be "fully vaccinated by November 22, 2021."   https://www.saferfederalworkforce.gov/faq/vaccinations/ (last visited Nov. 23, 2021).  That requires injunctive relief, which such a suit for adverse employment action cannot remedy.  Furthermore, the Task Force would not be party to any judicial review proceeding brought to the Merit Systems Protection Board or the United States Court of Appeals for the Federal Circuit.   That feature distinguishes this suit from *Elgin v. Department of Treasury*, 567 U.S. 1 (2012), which held that employees terminated pursuant to a statute they claimed was unconstitutional could properly call on the Federal Circuit, with the Merit Systems Protection Board acting as a factfinding adjunct, to adjudicate their claim.

The Opposition brief cites 5 U.S.C. §§3301, 3302.  Executive Order 14,043 cited only 5 U.S.C. §§ 3301, 3302, and 7301 for its authority.  None of those statutes authorize vaccines as a condition of federal employment.

Section 3301, titled "Civil Service; generally," does not provide for a vaccine mandate. It permits the President to (1) prescribe such regulations for the admission of individuals into the civil service in the executive branch as will best promote the efficiency of their service; (2) ascertain the fitness of applicants as to age, health, character, knowledge, and ability for the employment sought; and (3) appoint and prescribe the duties of individuals to make inquiries for the purpose of this section. 5 U.S.C. § 3301.

Nor does Section 3302, entitled "Competitive service; rules," authorize a vaccine mandate by Executive Order. It allows the President to promulgate rules governing the competitive service. The rules shall provide, as nearly as conditions of good administration warrant, for: (1) necessary exceptions of positions from the competitive service; and (2) necessary exceptions from the provisions of sections 2951, 3304(a), 3321, 7202, and 7203 of this title. Each officer and individual employed in an agency to which the rules apply shall aid in carrying out the rules. 5 U.S.C. § 3302.

"Presidential regulations," Section 7301, also does not authorize a vaccine mandate. It reads: "The President may prescribe regulations for the conduct of employees in the executive branch." 5 U.S.C. § 7301.  Vaccination is not "conduct" in any meaningful sense of the word. Notably, Executive Order 14,043 is an unprecedented exercise of Executive authority.  Never before has the federal government claimed authority to mandate vaccines (EUA or otherwise) for all federal civilian employees as a condition of employment.

## III.   THE CASES CITED BY DEFENDANTS ARE EITHER NOT CONTROLLING OR INAPPOSITE

The two major Fifth Circuit cases upon which Defendants rely are run of the mill employment cases under the CSRA.  The remedy sought was money damages in district court arising from an agency's adverse employment action.  *See Roland v. Marsh*, 937 F.2d 134 (5th Cir. 1991)(holding no money damages in tort claims on discharge of employee for publishing naked pictures of his wife); B*roadway v. Block*, 694 F.3d 979 n. 1 (5th Cir., 1982)(awarding no money damages in case involving APA claim for reassignment of

position but noting contention might be cognizable in court of claims). In this respect, the cases were crucially different and do not militate in favor of jurisdiction-stripping here.

One of Defendants' final claims also merits response. Defendants contend that the EUA statute does not provide for a "private right of action." Defs. Opp. at 29-30. But Defendants mistake the context in which that argument is applicable. It is true that private individuals cannot bring a lawsuit challenging an FDA grant of Emergency Use Authorization. That is the Secretary of Health's purview. But individuals can *of course* argue that they are being unlawfully forced or coerced by the President's EO's – whether coming from his cobbled together agencies or agencies formed by Congress -- into taking an EUA product. Suppose, for example, that FDA granted an EUA for marijuana use in certain circumstances, and the President then issued an EO requiring all federal employees to take it, on pain of losing their jobs. Certainly, at the very least, those employees would be able to challenge the EO.

Defendants rely on a memo written by the Office of Legal Counsel. *See* "Memorandum Opinion for the Deputy Counsel to the President," *Whether Section 564 of the Food, Drug, and Cosmetic Act Prohibits Entities from Requiring the Use of a Vaccine Subject to an Emergency Use Authorization* (July 6, 2021) (OLC Op.) at 7-13, *available at* https://www.justice.gov/olc/file/1415446/download (last visited Aug.1, 2021). This Court is not bound by the OLC Opinion—an advisory opinion written by *and for* the Executive Branch. See *Citizens for Responsibility & Ethics in Wash. v. Office of Admin*., 249 F.R.D. 1 (D.C. Cir. 2008) ("OLC opinions are not binding on the courts[; though] they are binding

on the executive branch until withdrawn by the Attorney General or overruled by the courts[.]") (cleaned up).  This is another reason that judicial review is required.

In any event, the OLC Opinion is not logically coherent.  While recognizing that EUA products have "not yet been generally approved as safe and effective," and that recipients must be given "the option to accept or refuse administration of the product," OLC nevertheless maintains that EUA vaccines can be mandated. OLC Op. at 3-4, 7.  In other words, in OLC's opinion, the requirement that recipients be "informed" of their right to refuse the product does not mean that an administrator is precluded from mandating the vaccine. All that an administrator must do, in OLC's view, is tell the recipient they have the option to refuse the vaccine. Id. at 7-13. 11.  This facile interpretation renders the entire informed consent provision hollow and meaningless.  After all, what does it mean to have the right to refuse, if the government can premise your employment upon taking the EUA product?

Recognizing the illogic of the Opinion and its inability to square its construction with the text of the EUA statute, OLC admits that its "reading … does not fully explain why Congress created a scheme in which potential users of the product would be informed that they have 'the option to accept or refuse' the product." Id. at 10.  Congress called for potential vaccine recipients to be informed precisely so that they could decide whether to refuse an EUA product. Nothing in the OLC Opinion addresses the fact that if it were taken as a blanket authorization for state and local governments to impose vaccine mandates, a vital portion of the EUA statute's text would be rendered superfluous. See, e.g., TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that

16

a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (cleaned up).

OLC then claims that Congress would have explicitly stated if it intended to prohibit mandates for EUA products. *Id.* at 8-9. But Congress did say so. The plain language states that the recipient of an EUA vaccine must be informed "of the option to accept or refuse the product." 21 U.S.C. § 360bbb-3(e)(1)(A)(ii). Especially when read against the backdrop of what the Constitution requires and against the common law rules from which the constitutional protections for informed consent arose, Congress's intent to protect informed consent is pellucid. And Congress "is understood to legislate against a background of common-law … principles," *Astoria Fed. Sav. & Loan Assn. v. Solimino,* 501 U.S. 104, 108 (1991).

To circumvent the statutory text concerning the military waiver, discussed in the initial briefing, OLC spins out a tortured argument under which the President's waiver would merely deprive military members of their rights to know that they can refuse the EUA product—rather than waiving their rights to actually refuse the product. OLC Op. at 14-15. OLC even acknowledges that its opinion is belied by the congressional conference report, which also contemplated that 10 U.S.C. § 1107a(a)(1) "would authorize the President to waive the right of service members to refuse administration of a product if the President determines, in writing, that affording service members the right to refuse a product is not feasible[.]" Id. (citations omitted).   Unlike OLC, this Court must not ignore the plain statutory prohibition on mandating EUA products.

17

In sum, and for the foregoing reasons, an injunction or stay of the Vaccine Mandate should issue.

Respectfully submitted,

/s/ John J. Vecchione

John J. Vecchione
Senior Litigation Counsel
Virginia Bar # 73828
John.Vecchione@ncla.legal
*Admitted Pro Hac Vice*


/s/

Jenin Younes
Litigation Counsel
New York Bar # 5020847
Jenin.Younes@ncla.legal
*Admitted Pro Hac Vice*

/s/

Senior Litigation Counsel
Wyoming Bar # 5-2656
Harriet.Hageman@ncla.legal
*Admitted Pro Hac Vice*


NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
Telephone: (202) 869-5210
Facsimile: (202) 869-5238

/s/ *Robert Henneke*

ROBERT HENNEKE
Texas Bar No. 24046058

18

TEXAS PUBLIC POLICY
FOUNDATION
901 Congress Avenue
Austin, TX 78701
Telephone: (512) 472-2700
Facsimile: (512) 472-2728
rhenneke@texaspolicy.com

*Attorneys for Plaintiff*

19